NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000035
30-OCT-2015
08:54 AM**

NO. CAAP-13-0000035

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO
BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME
LOANS SERVICING, LP, Plaintiff-Appellee, v.
SHANNON DESIREE HILL, Defendant-Appellant, and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY
AS A NOMINEE FOR MORTGAGEIT, INC.; JOHN DOES 1-50;
JANE DOES 1-50; DOE PARTNERSHIPS 1-50; DOE
CORPORATIONS 1-50; DOE ENTITIES 1-50; and
DOE GOVERNMENTAL UNITS 1-50; Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 11-1-0352 (JRV))

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Foley and Leonard, JJ.)

Defendant-Appellant Shannon Desiree Hill (**Hill**) appeals from the Circuit Court of the Fifth Circuit's (**Circuit Court's**) December 19, 2012 Judgment and seeks relief from the Circuit Court's December 19, 2012 Findings of Fact; Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment Against All Parties and for Interlocutory Decree of Foreclosure (**Foreclosure Decree**).[1]

I.    BACKGROUND FACTS

On or about May 15, 2006, Hill signed a promissory note for $408,000 in exchange for a loan from lender MortgageIt, Inc. (**MortgageIt**). The loan was secured by a mortgage on Hill's

---

[1]    The Honorable Randal G.B. Valenciano presided.

property in Kapaa, Hawai'i. The mortgage, which was recorded in the Bureau of Conveyances on May 23, 2006, named Hill as the borrower/mortgagor, MortgageIt as the lender, and Mortgage Electronic Registration Systems, Inc. (**MERS**) as the mortgagee. The mortgage stated that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."

On or about April 16, 2009, Countrywide Home Loans Servicing LP (**Countrywide**), the servicer of Hill's loan, sent a Notice of Intent to Accelerate, which stated that Hill was in default. It stated that "default will not be considered cured unless Countrywide receives 'good funds' in the amount $5,286.62 on or before May 16, 2009."

An Assignment of Mortgage was recorded on September 21, 2009 in which MERS transferred its interest in the mortgage to BAC Home Loans Servicing, LP (**BAC Home Loans**). BAC Home Loans merged into Bank of America in August 2011.

On December 9, 2011, Bank of America filed a Complaint for Foreclosure in the Circuit Court. In addition to asserting its interest in the mortgage by virtue of the Assignment of Mortgage, Bank of America also averred that it was assigned the promissory note and was then in possession of the note. Hill filed her answer on January 20, 2012, raising several affirmative defenses.

On May 22, 2012, Bank of America filed its Motion for Summary Judgment Against All Parties and for Interlocutory Decree of Foreclosure. Hill opposed the motion. She argued that Bank of America had not demonstrated that it was the holder of the note or the proper assignee of the mortgage, that the assignment was invalid because MortgageIt had "ceased to exist" before the assignment was made, that the assignment was executed by a "robo-signer", and that the note and mortgage were void and unenforceable because they were "procured by an unlicensed lender," *i.e.*, MortgageIt.

In her memorandum in opposition to summary judgment, Hill requested, if the court was not inclined to deny Bank of

America's motion, it should grant a continuance pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rule 56(f) to allow for further discovery. Hill submitted a declaration as well as a declaration by her counsel to support her argument that summary judgment should be denied. Additionally, Hill attached a letter from the State of Hawai'i Professional and Vocational Licensing Division, Department of Commerce and Consumer Affairs, which stated that a search of its records showed that MortgageIt was not issued a (mortgage broker) license before December 31, 2010, a "Certificate of Assistant Secretary of Bank of America, National Association, Manager of BAC GP, LLC," in support of the proposition that Ken Satsky (**Satsky**) who signed the assignment on behalf of MERS was an Assistant Vice President of BAC GP, LLC., and a January 3, 2007 press release entitled "Deutsche Bank completes acquisition of MortgageIt Holdings" to show that MortgageIt had "ceased to exist" before the assignment.

On or about May 23, 2012, Hill sent a request for production of documents to Bank of America, requesting, *inter alia*, the employment information for Satsky and Steven King (**King**), who signed a declaration in support of Bank of America's Motion for Summary Judgment, and the original "wet ink" promissory note. Bank of America sent back its response with objections. Hill then filed a Motion to Compel Plaintiff to Produce Documents pursuant to HRCP Rules 26 and 37 on June 29, 2012.

The hearing on Bank of America's Motion for Summary Judgment was held on July 3, 2012. During the hearing, Hill's counsel requested a continuance on the Motion for Summary Judgment at least until the date of the hearing on the Motion to Compel. However, the Circuit Court granted the Motion for Summary Judgment and denied the Motion to Compel, holding that the summary judgment rendered the Motion to Compel moot. The court issued its Foreclosure Decree and Judgment on December 19, 2012. Hill timely appealed on January 18, 2013.

II. POINTS OF ERROR

On appeal, Hill contends that:

(1) The Circuit Court erred by granting the Motion for Summary Judgment because genuine issues of material fact remained in dispute as to Bank of America's standing to foreclose;

(2) The Circuit Court abused its discretion by taking the Motion to Compel off the calendar; and

(3) Although not raised in the points of error, Hill also argues that the court erred by declining to grant a continuance pursuant to HRCP Rule 56(f).

III. STANDARDS OF REVIEW

> On appeal, the grant or denial of summary judgment is reviewed *de novo*. *See State ex rel. Anzai v. City and County of Honolulu*, 99 Hawai'i 508, [515], 57 P.3d 433, [440] (2002); *Bitney v. Honolulu Police Dep't*, 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001).

>> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

> *Kahale v. City and County of Honolulu*, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

Nuuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008); see also First Ins. Co. of Haw. v. A&B Props., 126 Hawai'i 406, 413-14, 271 P.3d 1165, 1172-73 (2012).

"[T]he applicable standard of review on a trial court's ruling on a motion to compel discovery, brought pursuant to HRCP Rule 26, is abuse of discretion." Hac v. Univ. of Haw., 102 Hawai'i 92, 101, 73 P.3d 46, 55 (2003).

> "A trial court's decision to deny a request for a continuance pursuant to HRCP Rule 56(f) will not be reversed absent an abuse of discretion." *Kaleikini v. Yoshioka*, 128 Hawai'i 53, 67, 283 P.3d 60, 74 (2012) (citations and internal quotation marks omitted).

> [T]he request must demonstrate how postponement of
> a ruling on the motion will enable him or her, by
> discovery or other means, to rebut the movants'
> showing of absence of a genuine issue of fact. An
> abuse of discretion occurs where the trial court has
> clearly exceeded the bounds of reason or disregarded
> rules or principles of law or practice to the
> substantial detriment of a party litigant.
>
> *Associates Fin. Services of Hawaii, Inc. v. Richardson*, 99
> Hawai'i 446, 454, 56 P.3d 748, 756 (App.2002) (quoting *Josue
> v. Isuzu Motors Am., Inc.*, 87 Hawai'i 413, 416, 958 P.2d
> 535, 538 (1998)).

<u>U.S. Bank Nat. Ass'n v. Salvacion</u>, 134 Hawai'i 170, 172-73, 338
P.3d 1185, 1187-88 (App. 2014).

IV.  <u>DISCUSSION</u>

   A.   <u>Bank of America's Standing to Foreclose</u>

   "In a judicial foreclosure, a mortgagee must establish
its standing to foreclose.  A mortgagee's standing to judicially
foreclose may be challenged by a defending mortgagor."  <u>Lizza v.
Deutsche Bank Nat. Trust Co.</u>, 1 F.Supp.3d 1106, 1117 (D. Haw.
2014) (citations omitted).  A mortgagee must establish that it
was assigned the mortgage and corresponding promissory note
before it has the ability to foreclose.  <u>Citicorp Mortg., Inc. v.
Bartolome</u>, 94 Hawai'i 422, 434, 16 P.3d 827, 839 (App. 2000)
(plaintiff was real party in interest in foreclosure action where
it owned the mortgage and note throughout the proceedings).

   1.   <u>Copies of the endorsed promissory note, the
        mortgage, and the assignment of the mortgage, were
        admissible.</u>

   Hill alleges that Bank of America provided insufficient
evidence that it holds the promissory note and was validly
assigned the mortgage.  In connection with its motion for summary
judgment, Bank of America provided a declaration by Assistant
Vice President King stating that:

> The information in this Declaration is taken from [Bank of
> America's] business records.  I have personal knowledge of
> [Bank of America's] procedures for creating these records.
> They are: (a) made at or near the time of the occurrence of
> the matters recorded by persons with personal knowledge of
> the information in the business record, or from information
> transmitted by persons with personal knowledge; (b) kept in
> the course of [Bank of America's] regularly conducted
> business activities; and (c) it is the regular practice of
> [Bank of America] to make such records.

King further stated: "Plaintiff [Bank of America] is the holder [of] the promissory note ('Endorsed Note') for this Loan. A true and correct copy of the Endorsed Note is attached as Exhibit 'B.'" Exhibit B was a copy of the promissory note executed by Hill in favor of MortgageIt, which included an endorsement from MortgageIt to Countrywide Bank, N.A., followed by an endorsement from Countrywide Bank, N.A. to Countrywide Home Loans, Inc., and another endorsement from Countrywide Home Loans, Inc. in blank. King also attached what he declared to be true and correct copies of the Mortgage (Exhibit C) and the Assignment of Mortgage (Exhibit D).

Hill argues that King did not properly authenticate the Endorsed Note, the Mortgage, or the Assignment of Mortgage. Hawai'i Rules of Evidence (**HRE**) Rule 901(a) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Hill maintains that to properly authenticate these documents, King would have needed to specifically testify that they were either the originals or copies of the originals and that they were in Bank of America's possession. However, King's declaration states that the attached Endorsed Note, Mortgage, and Assignment of Mortgage were true and correct copies and that Bank of America is the holder of the note. In addition, Hill does not put forth any cogent argument as to why King needed to testify that Bank of America was in possession of the Mortgage or Assignment of Mortgage when they were certified as true and correct copies of the records of the Bureau of Conveyances. Under HRE Rule 902(4), extrinsic evidence of authenticity is not required for certified copies of public records. Accordingly, King's statements provide "evidence sufficient to support a finding" that Exhibit B, C, and D are what he purported it to be: true and correct copies of the Endorsed Note, the Mortgage, and the Assignment of Mortgage.

Hill's further argument that the Endorsed Note, Mortgage, and Assignment of Mortgage were inadmissible hearsay is

without merit. See HRE Rule 801 ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Island Directory Co., Inc. v. Iva's Kinimaka Enterprises, Inc., 10 Haw. App. 15, 21-22, 859 P.2d 935, 939 (1993) ("It is well-settled that in a suit for breach of contract, the contract allegedly breached is not hearsay and is thus admissible into evidence. . . . In the instant case, the written document was not offered into evidence to prove the truth of its contents, but to prove that it was made, signed by [Defendant], and expressed the legal relationship of the parties. . . . Thus, the document was not hearsay and was properly admitted into evidence by the trial court.") (citations omitted).

2. **There was no genuine issue of material fact as to whether Bank of America was the holder of the note.**

Hill argues that there is a genuine issue of material fact as to whether the endorsement on the Endorsed Note occurred before MortgageIt was acquired by Deutsche Bank. On a motion for summary judgment, "[o]nce the movant has satisfied the initial burden of showing that there is no genuine issue of material fact, the opposing party must come forward, through affidavit or other evidence, with specific facts showing that there is a genuine issue of material fact." Miller v. Manuel, 9 Haw. App. 56, 65, 828 P.2d 286, 292 (1991) (citing K.M. Young & Assoc., Inc. v. Cieslik, 4 Haw. App. 657, 675 P.2d 793 (1983)). If the non-moving party fails to meet this burden, the moving party is entitled to summary judgment as a matter of law. Hall v. State, 7 Haw. App. 274, 284, 756 P.2d 1048, 1055 (1988); see also HRCP Rule 56(e).[2]

---

[2] HRCP Rule 56(e) provides, in relevant part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or
(continued...)

As the Endorsed Note was a negotiable instrument, Bank of America is entitled to enforce the note if it is the holder. Hawaii Revised Statutes (**HRS**) § 490:3-301 (2008). King's declaration averred that Bank of America was the holder of the note. As it was not the original holder, Bank of America would be the holder of the note only if the note was properly negotiated to it. "'Negotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." HRS § 490:3-201(a) (2008). "Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." HRS § 490:3-201(b) (2008). Not only did King's declaration state that Bank of America was the holder of the note and that Exhibit B was a true and correct copy of the Endorsed Note, but the Endorsed Note itself showed an unbroken line of endorsements (or "indorsements") from MortgageIt, the original holder, to Countrywide Bank, N.A., followed by an endorsement to Countrywide Home Loans, Inc., and finally an endorsement to no one in particular, i.e. a "blank indorsement".[3] An instrument endorsed in blank is payable to the bearer and may be negotiated by possession alone. HRS § 490:3-205(b) (2008). Bank of America, by offering a declaration attesting that it was a holder of this instrument, provided

---

[2](...continued)
>
> as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

[3]  HRS § 490:3-205 (2008) states:

> (a) If an indorsement is made by the holder of an instrument, whether payable to an identifiable person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement". . . .
> (b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement". When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

evidence that it possessed the note. See Hanalei, BRC Inc. v. Porter, 7 Haw. App. 304, 309, 760 P.2d 676, 680 (1988). Bank of America therefore established its *prima facie* claim that it was the holder of the note. See, e.g., In re Collins, No. 13-01783, 2014 WL 3725020 at *1 (Bankr. D. Haw. July 24, 2014) (creditor established a *prima facie* claim that it was the holder of a promissory note where it provided a copy of the note indorsed in blank and attached an assignment of the mortgage that secured the note).

As Bank of America satisfied its initial burden, the burden then shifted to Hill to set forth specific facts, as opposed to mere allegations, that there was a genuine issue for trial. HRCP Rule 56(e). Hill's argument appears to be that because Deutsche Bank acquired MortgageIt in 2007, there was a genuine issue of fact as to whether the note was endorsed before or after this acquisition. We reject Hill's argument that the MortgageIt endorsement was legally insufficient. The press release Hill provided does not indicate that MortgageIt dissolved or otherwise ceased to exist, but merely that Deutsche Bank acquired MortgageIt by a stock purchase and that MortgageIt would eventually become part of Deutsche Bank's Residential Mortgage Backed Securities group.[4] Hill failed to present evidence to contradict Bank of America's showing that it was holder of the note and, therefore, did not raise a genuine issue of material fact. See also, e.g., In re Tyrell, 528 B.R. 790, 794 (Bankr. D. Haw. 2015) (the fact that endorsements on a promissory note were made by payees that have subsequently gone out of business did not raise a genuine issue that the endorsements were forged when the debtor offered no evidence that the endorsements were made after the payees were defunct).

---

[4] We note that in several lawsuits filed since 2007, MortgageIt is identified as a subsidiary of Deutsche Bank. See, e.g., IBEW Local 90 Pension Fund v. Deutsche Bank AG, No. 11 Civ. 4209 (KBF), 2013 WL 1223844 (S.D.N.Y. Mar. 27, 2013); Davis v. MortgageIT, Inc., No. Cov. S-09-3028 FCD/GGH, 2010 WL 2943162 (E.D. Cal. July 23, 2010); Davis v. Wells Fargo Bank N.A., Civ. No. S-09-3028 FCD/GGH, 2010 WL 1779927 (E.D. Cal. Apr. 29, 2010).

Finally, Hill alleges that she raised a genuine issue of material fact as to who was the holder of the note when she provided the court with a print out of a search conducted by her counsel in May 2012 on the MERS Servicer Identification System identifying Bank of America as the servicer of the loan and the investor as "Federal Home Loan Mortgage Corporation." However, even assuming that this print out is admissible, Hill offers no support for her assertion that an "investor" is the same as a note holder. This argument is without merit.

3. <u>There was no genuine issue of material fact as to whether the mortgage was validly assigned to Bank of America.</u>

Hill alleges that Bank of America was not validly assigned the mortgage and therefore has not satisfied its burden of proving standing to foreclose.

As noted, King provided the court with copies of the Mortgage and the Assignment of Mortgage. The Assignment of Mortgage, recorded in the Bureau of Conveyances on September 21, 2009, reads:

> FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc., solely as nominee for Mortgageit, Inc., a New York Corporation, does hereby transfer without recourse to BAC HOME LOANS SERVICING, LP, a Texas limited partnership, whose address is, C\O Bank of America fka Countrywide Home Loans, Inc., TX, Foreclosure Department, 7105 Corporate Dr., MS:PTX-B-35, Plano, TX 75024, all of its right, title and interest in and to that certain mortgage recorded on 05/23/06 in the Bureau of Conveyances, State of Hawaii, Regular System document number 2006-095794.

Bank of America also provided a petition and order in the Land Court of the State of Hawaii indicating that BAC Home Loans Servicing, LP had merged into Bank of America. Again, this satisfies Bank of America's burden to show that it was assigned the mortgage and had standing to foreclose. Hill argues, however, that "this Assignment is a legal impossibility where MERS was acting solely on behalf of its principal, MortgageIt, which no longer existed at the time the Assignment was executed and signed on its behalf."

As addressed above, Hill has not provided us with credible evidence that MortgageIt dissolved and did not continue

as a subsidiary of Deutsche Bank. In any case, even assuming that the press release raised an issue as to whether MortgageIt "ceased to exist" before the assignment of the mortgage, Hill's argument is without merit.

The underlying mortgage in this case identifies MERS as the mortgagee and a "separate corporation that is acting solely as a nominee for Lender [MortgageIt] and Lender's *successors and assigns*." It also states that "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale [the property,]" and "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests [granted by Borrower], including, but not limited to, the right to foreclose and sell the Property[.]" In analyzing mortgages with similar language, the United States District Court for the District of Hawai'i has reasoned that when a lender has entered bankruptcy or even dissolved prior to the assignment of the mortgage, MERS, as the mortgagee, is not prevented from assigning its interest in the mortgage. See Andrade v. US Bank Nat. Ass'n, Civil No. 13-00255 LEK-KSC, 2013 WL 4552186 at *9-10 (D. Haw. Aug. 27, 2013) (in a case involving a mortgage with identical language, the assignment of the mortgage from MERS to the defendant was valid even though the original lender had declared bankruptcy before the assignment was recorded); Camat v. Fed. Nat. Mortg. Ass'n, Civil No. 12-00149 SOM/BMK, 2012 WL 2370201 at *1, *7-8 (D. Haw. June 22, 2012); Cooper v. Bank of New York Mellon, Civil No. 11-00241 LEK-RLP, 2011 WL 3705058 at *13 (D. Haw. Aug. 23, 2011) (analyzing identical language in a mortgage, the court held that "[u]nder this plain language, MERS had the authority to take any action required of the lender[,]" despite the fact that the lender had declared bankruptcy and dissolved before the assignment of the mortgage was recorded). The District Court's analysis is sound.

In Camat, the plaintiff-borrower asserted that the defendant improperly conducted a nonjudicial foreclosure. Camat,

11

2012 WL 2370201 at *7. The underlying mortgage executed by the plaintiff had identical language to the case at bar, naming MERS as the mortgagee and granting MERS, solely as nominee for the lender and its successors and assigns, the power of sale and foreclosure. Id. at *1-2. The lender apparently dissolved on April 2, 2009. Id. at *2. Before the dissolution, on February 27, 2009, an Assignment of Mortgage was recorded in which MERS assigned the mortgage to the defendant. Id. Although it appeared that the lender had dissolved after the assignment, the court reasoned that "even if it could be argued that [the lender] was dissolved earlier, that dissolution would not prevent MERS from transferring any interest in the mortgage." Id. at *7.

The analysis in Kiah v. Aurora Loan Servs., LLC, Civil Action No. 10-40161-FDS, 2011 WL 841282 (D. Mass. Mar. 4, 2011) which was cited by the court in Camat, is also persuasive. In Kiah, the lender had dissolved after the alleged assignment of the mortgage but before the date the assignment was recorded. Id. at *2. Regardless of when the assignment actually occured, the court in Kiah reasoned that:

> The plain language of the mortgage states that MERS was acting as nominee for [the lender] and its "successors and assigns." . . . [The lender's] dissolution would not prevent its successors and assigns, including [defendant], from seeking transfer of the mortgage from MERS.
>
> Accordingly, the dissolution of [the lender] would not and could not prevent [the defendant] from obtaining an assignment of the mortgage from MERS, both as a matter of law and according to the arrangement that existed between MERS and [the defendant] as a "successor and assign" of [the lender].

Id. at *4.

Here, as in Kiah and Camat, the plain language of the mortgage allows MERS to transfer its interest in the mortgage as the nominee of MortgageIt and its successors and assigns. Even if MortgageIt had ceased to exist as a separate entity before the assignment was recorded, MERS was not precluded from assigning the mortgage on behalf of MortgageIt's successor. Thus, Hill failed to raise a genuine issue of material fact as to whether Bank of America was validly assigned the mortgage.

4.    The allegation of "robo-signing" does not raise a genuine issue of material fact.

Hill contends that:

the Assignment was fraudulently "robo-signed" by an individual named Ken Satsky who claimed under oath before a notary for the State of Texas to be acting on behalf of MERS, solely as a nominee for [MortgageIt], which did not even exist, as its "Assistance Vice President". However, Mr. Satsky is a notorious national "robo-signer," who has previously robo-signed documents claiming authority from many different corporations, without personal knowledge of the matters attested to.

In support of this argument, Hill refers to the "Certificate of Assistant Secretary of Bank of America, National Association, Manager of BAC GP, LLC" to show that in addition to being an Assistant Vice President of MERS, Satsky was apparently also an Assistant Vice President of BAC Home Loans Servicing, LP. However, Hill has provided us with no discernible argument as to why this is evidence that Satsky did not have the authority to assign the mortgage on behalf of MERS, even if he may have also been an officer of BAC Home Loans. The District Court for the District of Hawai'i, for example, has soundly rejected bare allegations of "robo-signing" as grounds for a claim that an assignment was invalid. Nottage v. Bank of New York Mellon, Civil No. 12-00418 JMS/BMK, 2012 WL 5305506 at *6 (D. Haw. Oct. 25, 2012) ("[Plaintiff] fails to explain why Rice's apparent authority to sign documents on behalf of multiple companies establishes that she did not have authority in this instance . . . . The court therefore reiterates its holding from other cases that conclusory assertions of 'robo-signing' fail to state a plausible claim [for wrongful foreclosure].") We also conclude that Hill's allegations do not raise a genuine issue as to whether the assignment was proper.

5.    The mortgage and note were not void and unenforceable merely because MortgageIt was not a licensed mortgage broker.

Hill maintains that the promissory note and mortgage were void and unenforceable under the law in effect at the time they were executed. Under HRS § 454-8 (1993) (repealed effective Jan. 1, 2011), "[a]ny contract entered into by any person with

any unlicensed mortgage broker or solicitor shall be void and unenforceable." A mortgage broker was defined in HRS § 454-1 (1993) (repealed effective Jan. 1, 2011) as "a person not exempt under section 454-2 who for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly makes, negotiates, acquires, or offers to make, negotiate, or acquire a mortgage loan on behalf of a borrower seeking a mortgage loan."

Hill cites to Beneficial Haw., Inc. v. Kida, 96 Hawai'i 289, 30 P.3d 895 (2001), for the proposition that "loans made by an unlicensed lender are completely unenforceable in judicial foreclosure actions in Hawaii." However, Kida did not hold that any loan made by a lender who was not also licensed as a mortgage broker is unenforceable. Rather, it held that "HRS § 454-8 must be interpreted to invalidate only those contracts into which unlicensed mortgage brokers enter in their capacity as mortgage brokers within the meaning of HRS § 454-1." Kida, 96 Hawai'i at 309, 30 P.3d at 915. In Kida, although a group known as The Mortgage Warehouse was designated on the loan documents as the "lender" while another entity was the "broker", The Mortgage Warehouse actually acted as the broker since it did not have any of its own funds to lend, but arranged funding from another entity and was compensated for its services in an arrangement known as "table funding". Id. at 306, 30 P.3d at 912. Unlike in Kida, in the present case, there is no evidence that MortgageIt was acting as a broker.

Hill contends that:

> Insofar as MortrgaeIt [sic] indisputably made the subject mortgage loan for compensation or gain or in the expectation of compensation or gain, MortrgaeIt [sic] qualified as a "mortgage broker" requiring licensing under Chapter 454 of the Hawaii Revised Statues [sic]. Appellee provided no evidence to suggest that MortrgaeIt [sic] was otherwise exempt from the licensing requirement. In fact, MortgageIt was not licensed as a mortgage broker or mortgage solicitor in Hawaii before December 31, 2010.

(Footnote omitted). Even accepting that MortgageIt was not licensed as a broker, and assuming that it made the subject mortgage loan "for compensation or gain", we do not agree that it

qualified as a broker under HRS § 454-1. The statute also defines a mortgage broker as one who makes a loan *on behalf* of the borrower. Kida held that "we construe the phrase 'on behalf of a borrower,' as set forth in HRS § 454-1, as amended, to mean 'in the interest of a borrower' or 'for the benefit of a borrower.'" Id. at 309, 30 P.3d at 915. However, a lender does not automatically act on behalf of a borrower when it lends money to the borrower. McCarty v. GCP Mgmt., LLC, Civil No. 10-00133 JMS/KSC, 2010 WL 4812763 at *4 (D. Haw. Nov. 17, 2010). "Rather, it is well established that a lender acts on its *own* behalf in an arms-length loan transaction (even if a borrower might in some sense 'benefit' from the loan transaction)." Id. Here, the only evidence is that MortgageIt acted as the lender; nothing indicates that it attempted to find financing for Hill from any other lender besides itself.[5] Absent evidence that MortgageIt acted as Hill's mortgage broker, the note and mortgage are not void. See Wilson v. Noel, No. CAAP-12-0000098, 2015 WL 2226273 at *2 (Haw. App. May 12, 2015) ("Because Wind River Brokers did not broker Noel's mortgage loan transaction, their unlicensed status does not affect the validity of Noel's note and mortgage."); Fed. Home Loan Mortg. Corp. v. Padron, No. CAAP-13-0001153, 2015 WL 405637 at *2 (Haw. App. Jan. 29, 2015) (rejecting the argument that a note and mortgage were void where, although the lender, SecurityNational, was not a licensed mortgage broker, "SecurityNational was acting on its behalf as a lender, not on behalf of Padron as a broker.").

B.    Hill was not entitled to a continuance.

In her memorandum in opposition to Bank of America's Motion for Summary Judgment, Hill requested that the court deny Bank of America's motion or, in the alternative, that it grant a continuance pursuant to HRCP Rule 56(f). On June 29, 2012, only

---

[5]    As Bank of America argues, "the loan application form Hill attached to her declaration in support of her summary judgment opposition identifies the entity that served as her mortgage broker for the transaction: Pacific Mortgage Corporation[.]" Thus, it appears that Pacific Mortgage Corporation, not MortgageIt, sought to acquire a loan on behalf of Hill and acted as her broker.

a few days before the July 3, 2012 hearing on the Motion for Summary Judgment, Hill filed a Motion to Compel Plaintiff to Produce Documents. At the July 3, 2012 hearing, Hill's counsel verbally requested to continue the Motion for Summary Judgment at least until August 21, 2012, the date the Motion to Compel was set for a hearing. In granting the Motion for Summary Judgment, the court stated that "[g]iven the Court's ruling on the summary judgment, the motion to compel, the Court views that moot and will take that off calendar."

> HRCP Rule 56(f) states:
>
> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A request for a continuance pursuant to HRCP Rule 56(f) must demonstrate how postponement of a ruling on the motion will enable the non-moving party, by discovery or other means, to rebut the movant's showing of absence of a genuine issue of fact. Acoba v. General Tire, Inc., 92 Hawai'i 1, 9, 986 P.2d 288, 296 (1999). "The party is required to show what specific facts further discovery might unveil." Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawai'i 277, 308, 172 P.3d 1021, 1052 (2007) (quoting McCabe v. Macaulay, 450 F.Supp.2d 928, 933 (N.D. Iowa 2006)).

> To prevail under [FRCP Rule 56(f)], parties opposing a motion for summary judgment must make (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists. The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment.

Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1129-30 (9th Cir. 2004) (citations and internal quotation marks omitted).[6]

---

[6] Although FRCP Rule 56(f) has been revised, the version discussed by Clorox Co. is identical to the current version of HRCP Rule 56(f). See Clorox Co., 353 F.3d 1129 n.2. Thus, we may look to Clorox Co., and other
(continued...)

Hill first made her request for a HRCP Rule 56(f) continuance in her memorandum in opposition to Bank of America's Motion for Summary Judgment. The memorandum was accompanied by a declaration by Hill and a declaration by Hill's counsel.

The declarations and the Motion to Compel allege that King did not have the first-hand knowledge necessary to properly authenticate the promissory note and that Hill should be provided with King's employment records and "any and all corporate resolutions and/or powers of attorney purporting to authorize Steven King to act on behalf of Plaintiff as its 'Assistant Vice President[.]'" Hill also requested employment information for Satsky and Azfar Siddiqui, the notary public who notarized the Assignment of Mortgage, based on her belief that Satsky was a "robo-signer" who fraudulently signed the assignment. However, Hill's assertion that King did not have the first-hand knowledge necessary to authenticate the note appears to be based on pure speculation. Additionally, as noted, she has provided no facts which raise the issue that Satsky was a "robo-signer". Thus, there was no plausible basis for her claims that further discovery was necessary to uncover the "fraudulent" nature of the note and the assignment, and the Circuit Court did not need to permit additional discovery to support these claims. See, e.g., Fifth Third Mortg. Co. v. Chicago Title Ins. Co., 692 F.3d 507, 511 (6th Cir. 2012) (defendant was not entitled to a continuance to conduct additional discovery in support of an improbable and baseless claim); Blough v. Holland Realty, 574 F.3d 1084, 1091 (9th Cir. 2009) (the district court did not abuse its discretion by denying a FRCP Rule 56(f) request where there was "no plausible basis to believe that the information sought exist[ed.]"); Young v. Van Buren, No. 28543, 2010 WL 4278321 at *5 (Haw. App. Oct. 29, 2010) (plaintiff was not entitled to a continuance under HRCP Rule 56(f) when he provided no basis for

_____

[6](...continued)
federal cases interpreting the identical version of FRCP Rule 56(f), as persuasive to our analysis of HRCP Rule 56(f). Thomas v. Kidani, 126 Hawai'i 125, 130 n.5, 267 P.3d 1230, 1235 n.5 (2011).

believing that a deposition of the defendant would yield information that would rebut the defendant's showing that there was no genuine issue of material fact).

Hill also requested that Bank of America produce the original "wet ink" note. However, Bank of America was not required to produce the original note before it could foreclose on Hill's property when it provided other sufficient evidence. Hill provided no support for the contention that Bank of America might not actually possess the note.

Hill's remaining requests for additional discovery under HRCP Rule 56(f) were broad requests for information related to the promissory note and assignment of mortgage that do not illuminate the specific facts Hill sought to uncover, but were rather the type of broad requests that are generally insufficient to justify a continuance. See Young, 2010 WL 4278321 at *5 n.7 ("We note that while parties should have a fair opportunity to conduct adequate discovery, the continuance of a hearing on a summary judgment motion cannot be based on the need to conduct a 'fishing expedition.'").

Moreover, the purpose of these requests was apparently to rebut Bank of America's showing that the note was properly negotiated and the mortgage was properly assigned. Hill sought to discover whether the note and mortgage were transferred after Deutsche Bank acquired MortgageIt and alleged that the Assignment of Mortgage was a forged and fraudulent document. Again, there is no support in the record for the claim that the Assignment of Mortgage, or indeed any document at issue, was forged. As to the assignment of the mortgage by MortgageIt, as we determined above, even if MortgageIt ceased to exist, by the terms of the mortgage, MERS was permitted to assign the mortgage on behalf of MortgageIt or its successors and assigns. Thus, even if Hill could uncover proof that the mortgage was assigned after MortgageIt ceased to exist, it would not rebut Bank of America's showing that the mortgage was properly assigned.

In short, Hill did not meet the requirements for relief pursuant to HRCP Rule 56(f). Therefore, the Circuit Court did

not err by entering summary judgment instead of granting a continuance for Hill to conduct further discovery.

V.     CONCLUSION

For the foregoing reasons, the Circuit Court's December 19, 2012 Judgment is affirmed.

DATED: Honolulu, Hawai'i, October 30, 2015.

On the briefs:

Gary Victor Dubin
Frederick J. Arensmeyer
Daisy Lynn B. Hartsfield
Zeina Jafar
(Dubin Law Offices)
for Defendant-Appellant

Rosalie Euna Kim
(Reed Smith LLP)
       and
Sharon V. Lovejoy
Brandi B. Balanda
(Starn O'Toole Marcus & Fisher)
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge